The Honorable Jay Bradford State Representative Post Office Box 8357 Pine Bluff, AR 71611-8367
Dear Representative Bradford:
I am writing in response to your request for my opinion on the following questions:
 1. Is a mayor required to give a "state of the city report" at the second regular meeting of the year? Is this the report encompassed by A.C.A. 14-43-504? If not, what is the report required by A.C.A. 14-43-504? Is this report separate and apart from the annual report on "finances and administrative activities" of the city required by A.C.A. 14-58-302? Are these statutes overlapping and, if so, which time frame is a mayor to use?
 2. What is the penalty for failure to adhere to either statute?
RESPONSE
With respect to your first question, although the substance of the reports contemplated in A.C.A. §§ 14-43-504 and 14-58-302 may in some ways overlap, I do not consider them coextensive. I therefore do not believe one should read the latter statute as having repealed by implication the former statute. Accordingly, in my opinion, a mayor should make both reports within the deadlines set forth in the statutes. With respect to your second question, the only potential penalty available for failure to observe one or both of these statutes is removal from office for nonfeasance pursuant to the procedures set forth in A.C.A. §14-42-109. However, in light of the overlap in the substance of the two reports, it seems unlikely that a reviewing court would consider an inadvertent failure to deliver one of the reports nonfeasance warranting removal from office.
Question 1: Is a mayor required to give a "state of the cityreport" at the second regular meeting of the year? Is this thereport encompassed by A.C.A. 14-43-504? If not, what is thereport required by A.C.A. 14-43-504? Is this report separate andapart from the annual report on "finances and administrativeactivities" of the city required by A.C.A. 14-58-302?
In my opinion, the report mandated by A.C.A. § 14-43-504 (Repl. 1998) might accurately be characterized as a "state of the city report," although that precise coinage appears nowhere in the Arkansas Code or any case law. I believe this required report is distinct from the annual report on "finances and administrative activities" mandated by A.C.A. § 14-58-302 (Repl. 1998).
Subsection 14-43-504(d) of the Arkansas Code imposes on the mayor the following obligation:
 The mayor shall, at the second regular meeting of the council in each year, and at such other times as he shall deem expedient, report to the council the municipal affairs of the city and recommend such measures to it as to him may seem advisable.
Section 14-58-302 of the Code provides:
 (a) The mayor of a first-class city shall prepare and submit to the municipal governing body within sixty (60) days after the end of each fiscal year a complete report on the finances and administrative activities of the city during the previous fiscal year.
 (b) The mayor shall also keep the governing body advised as to the financial condition and future needs of the city and make such recommendations as to him may be desirable.
The factual background giving rise to your request appears to be the failure of the mayor of Pine Bluff to render a report pursuant to A.C.A. § 14-43-504(d) at the second regular meeting of the Pine Bluff City Council — a circumstance the mayor reportedly explained by suggesting that his deadline for giving what you characterize as a "state of the city report" was not the one set forth in A.C.A. § 14-43-504(d), but rather the one set forth at A.C.A. § 14-58-302. The executive director of the Arkansas Municipal League reportedly agrees with the mayor, opining that A.C.A. § 14-58-302, which was enacted after A.C.A. §14-43-504, essentially repealed the earlier statute by implication.
In determining how to address the purported tension between these two statutes, I am guided by several principles of statutory construction. First, the cardinal rule is to give full effect to the will of the legislature. Flowers v. Norris,347 Ark. 760, 765, 68 S.W.3d 289, 292 (2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing State v. Havens, 337 Ark. 161,987 S.W.2d 686 (1999)). A statute is construed just as it reads, giving the words their ordinary and usually accepted meaning in common language. Edwards v. State, 347 Ark. 364, 64 S.W.3d 706 (2002). Nothing is taken as intended that is not clearly expressed.State ex rel. Sargent v. Lewis, 335 Ark. 188, 979 S.W.2d 894
(1998).
In addition, legislative enactments that are alleged to be in conflict must be reconciled, read together in a harmonious manner, and each given effect, if possible. Gritts v. State,315 Ark. 1, 864 S.W.2d 859 (1993); City of Fort Smith v. Tate,311 Ark. 405, 844 S.W.2d 356 (1993). Repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together." Donoho v. Donoho,318 Ark. 637, 887 S.W.2d 290 (1994). . . . When two legislative enactments are in such irreconcilable conflict that both cannot stand together, the conflicting provisions of one are repealed by implication by the other. Donoho, 318 Ark. 637; Ward SchoolBus Mfg., Inc. v. Fowler, 261 Ark. 100, 547 S.W.2d 394 (1977).
Moreover, a general statute normally does not apply where there is a specific statute governing a particular subject matter.Donoho v. Donoho, 318 Ark. 637, 887 S.W.2d 290 (1994). Ordinarily, the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act. Daniels v. City ofFort Smith, 268 Ark. 157, 594 S.W.2d 238 (1980).
In my opinion, it is possible to read the two statutes at issue as being in harmony. The charge to "report to the council the municipal affairs of the city and recommend such measures to it as to him may seem advisable" set forth in A.C.A. § 14-43-504(d) is not logically coextensive with the charge to "report on the finances and administrative activities of the city during the previous fiscal year" set forth in A.C.A. § 14-58-302(a). To be sure, the charge to advise the governing body of "the financial condition and future needs of the city" and to make recommendations based on those perceived needs, as set forth in A.C.A. § 14-58-302(b), might be broadly read as overlapping with the charge set forth in A.C.A. § 14-43-504(d). However, I cannot read the two statutes as effectively coextensive: to my mind, reporting "municipal affairs" and making recommendations based thereon is a broader enterprise than making the detailed financial and administrative report contemplated in A.C.A. §14-58-302. In this regard, given the context of A.C.A. §14-58-302, which focuses exclusively on financial and administrative matters, I believe the reference to "future needs" in A.C.A. § 14-58-302(b) should be read narrowly to mean financial future needs. In short, I find no "invincible repugnancy" between the two statutes of the sort that, underDonoho, supra, might warrant concluding that A.C.A. § 14-58-302
repealed A.C.A. § 14-43-504(d) by implication. Accordingly, I believe that a mayor should give both reports on the schedules set forth in the statutes.
Question 2: What is the penalty for failure to adhere toeither statute?
The Code sets forth no specific penalty for failure to adhere to either statute. The only potential claim against a mayor who fails to comply with one or both of these statutes would be for "nonfeasance in office" as defined at A.C.A. § 14-42-109(a)(1)(A) (Repl. 1998), which provides:
 If the mayor or police judge, member of the city council, or any other elective officer of any city of the first class or second class or incorporated town in this state shall willfully and knowingly fail, refuse, or neglect to execute, or cause to be executed, any of the laws or ordinances within their jurisdiction, they shall be deemed guilty of nonfeasance in office.
Subsections 14-42-109(a)(1)(B)(i) and (ii) of the Code provide that, upon indictment, the circuit court will hear the charges and, if it determines that the challenged conduct constitutes nonfeasance, remove the mayor from office. As this office acknowledged in Ark. Ops. Att'y Gen. Nos. 2002-093; 95-187; and 91-024, the requirement of obtaining an indictment renders any such proceeding criminal, rather than civil, in character, although the only penalty for conviction is removal from office. Upon removal, the governor is charged with appointing a replacement to fill the vacancy until a successor is elected at the next general election. A.C.A. § 14-42-109(b)(2)(B). Without presuming to predict the outcome of any action alleging nonfeasance against a mayor for failing to give the report contemplated in A.C.A. § 14-43-504, I will note that in light of the overlap in content between this report and the report contemplated in A.C.A. § 14-58-302, a finder of fact might well conclude that delivering the latter might well shield the mayor from removal pursuant to A.C.A. § 14-42-109.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh